**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| _____ : | | |
| JANET L. EVANS, ROBERT A. COPLIN, : | | |
| ANNETTE BARRY-SMITH, ROCHELLE : | | |
| JOYNER, RONALD SMITH, BONNIE L. : | Civil Action No. 06-3239 (JAG) | |
| FORD, NEIL SKELTON, JUDITH A. : | | |
| SAMUEL, : | **OPINION** | |
| : | | |
| Plaintiffs, : | | |
| : | | |
| v. : | | |
| : | | |
| PORT AUTHORITY OF NEW YORK and : | | |
| NEW JERSEY, its employees, agents : | | |
| and/or servants, : | | |
| : | | |
| Defendant. : | | |
| _____: | | |

**GREENAWAY, JR., U.S.D.J.**

This matter comes before this Court on the motions of Defendant Port Authority of New York and New Jersey ("Defendant" or "Port Authority") for partial dismissal of Plaintiffs'[1] Complaint for failure to state a claim upon which relief can be granted, pursuant to FED. R. CIV. P. 12(b)(6), and to compel Plaintiffs to provide a more definite statement, pursuant to FED. R. CIV. P. 12(e). For the reasons set forth below, Defendant's motion will be granted.

---

[1] The Complaint names the following individuals as Plaintiffs: Janet L. Evans; Robert A. Coplin; Annette Barry-Smith; Rochelle Joyner; Ronald Smith; Bonnie L. Ford; Neil W. Skelton; and Judith A. Samuel.

1

## I.  **INTRODUCTION**

Plaintiffs filed the instant action on July 17, 2006, alleging that Defendant violated their civil rights under the Fourteenth Amendment of the Constitution of the United States, in contravention of 42 U.S.C. §§ 1981, 1983, 1985, and 1986.  Plaintiffs also allege violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e to -e-17, and the New Jersey Law Against Discrimination ("NJLAD"), N.J. STAT. ANN. §§ 10:5-1 to -49 (2007).

Defendant contends that partial dismissal of the Complaint is warranted because: (1) Plaintiffs have failed to allege the existence of a conspiracy, a requisite element for proving liability under 42 U.S.C. §§ 1985 and 1986[2]; (2) Plaintiffs' punitive damages claims fail because Defendant is immune from having punitive damages assessed against it; (3) Plaintiffs' state law claims under the NJLAD are inapplicable to the Defendant as a matter of law[3]; (4) Plaintiffs' claims under 42 U.S.C. § 1981 are subsumed within 42 U.S.C. § 1983 as the exclusive remedy against state actors for violations of federal rights; (5) most of Plaintiff Evans' claims under 42 U.S.C. § 1983 are barred by the statute of limitations; (6) most of Plaintiff Evans' claims under Title VII are barred by the statute of limitations; and (7) Plaintiffs Coplin, Barry-Smith, Joyner, Smith, Ford, Skelton, and Samuel's claims under Title VII are barred because they failed to file a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). Defendant also argues that its motion for a more definite statement should be granted because, *inter alia*, requiring Plaintiffs to provide specific dates of the alleged lost promotions and

---

[2] Plaintiffs do not challenge Defendant's position regarding their claims under 42 U.S.C. §§ 1985 and 1986.  (Pls.' Br. in Opp. to Def.'s Mot. to Dismiss 1.)

[3] Plaintiffs do not challenge Defendant's position regarding their NJLAD claims.  (Pls.' Br. in Opp. to Def.'s Mot. to Dismiss 1.)

reclassifications will aid Defendant in forming a defense to Plaintiffs' claims.

## II. FACTUAL BACKGROUND

This case arises out of allegations of racial discrimination perpetrated by Defendant against Plaintiffs.  Plaintiffs, all of whom are African-American, allege that Defendant has failed to promote and/or reclassify Plaintiffs to senior positions because of their race.

### A.  Janet L. Evans

Plaintiff Janet Evans was hired by Defendant in 1979 as an Administrative Assistant. (Compl. ¶ 12.)  In 1985, she was promoted to the position of New Jersey Representative for Community Affairs.  (Id. at ¶ 12.)  In 1999, after Richard Codd, Director of Government and Community Affairs, was promoted (Id. at ¶ 21.), Evans "expressed interest" in the open position (Id. at ¶ 22).  Two years later, in 2001, Defendant hired an outside agency to "screen and interview candidates."  (Id. at ¶ 23.)  Evans applied and was interviewed for the position, but alleges that she did not receive "any formal communication regarding that process."  (Id. at ¶ 24.) Sometime in 2002, Sean Walsh, a Caucasian male, was appointed to fill the vacancy.  (Id. at ¶ 28.)

In November 2001, Evans "expressed interest" in another vacant position, Manager of New Jersey Affairs.  (Id. at ¶ 25.)  She alleges that she received no response to her inquiry.  (Id. at ¶ 26.)  Later, the position was renamed -- New Jersey Assistant Director of Government and Community Affairs.  (Id. at ¶ 27.)  Although Defendant did not post advertisements or conduct interviews for the renamed position, Sam Plumeri, a Caucasian male, was appointed in April 2002.  (Id.)  Later, Plumeri left the position (Id. at ¶ 29), and Plaintiff Evans again inquired about the vacancy (Id. at ¶ 30).  Evans again alleges that she received no response.  (Id. at ¶ 31.)  In approximately December 2002, Art Cifelli, a Caucasian male, was appointed to the position of

New Jersey Assistant Director of Government Affairs.  (Id. at ¶ 32.)

Later, Cifelli "was promoted to the position of Director of Government and Community Affairs."  (Id. at ¶ 33.)  Evans "expressed interest" in the newly vacated position of New Jersey Assistant Director of Community Affairs" (Id. at ¶ 34), but claims not to have received a response (Id. at ¶ 35).  Sometime later, Defendant again promoted Cifelli to the position of Acting Deputy Executive Director.  (Id.)

In May 2004 (Def.'s Mot. to Dismiss Ex. A 12), Plaintiff Evans received a Masters of Public Administration, but did not receive an upgrade in position or salary (Compl. ¶ 36).  Later, in 2004, the position of New York Assistant Director of Government and Community Affairs became available.  (Id. at ¶ 37.)  There were no advertisements posted regarding the vacancy, and no interviews conducted.  (Id. at ¶ 38.)  The position was filled by Luis Rodriguez, a Hispanic male.  (Id. at ¶ 38.)

Later, Cifelli vacated the position of Acting Deputy Executive Director of Defendant. (Id. at ¶ 39.)  No advertisements were posted or interviews conducted, but Jamie Fox, a Caucasian male, was appointed to fill the vacancy.  (Id. at ¶ 39.)

In March 2005, Plaintiff Evans "expressed written concerns about her lack of promotion." (Id. at ¶ 40.)  The next month, Shawn Laurenti, a Caucasian female with no prior experience with the Defendant, "was appointed to the position of Director of Government and Community Affairs."  (Id. at ¶ 41.) There were no postings or interviews conducted regarding the position. (Id.)

On July 19, 2005[4] Plaintiff Evans filed a charge of discrimination with the Equal

---

[4] Plaintiff Evans claims to have filed the charge of discrimination "on or about May 19, 2005."  (Compl. ¶ 164.)  However, the date indicated on the charge of discrimination, as

Employment Opportunity Commission ("EEOC") (Def.'s Mot. to Dismiss Ex. A 6), and has since received a right to sue letter (Pls.' Br. in Opp. to Def.'s Mot. to Dismiss 6).  The remaining Plaintiffs have not filed charges of discrimination with the EEOC, but seek to join in "the instant filing pursuant to the 'single filing rule doctrine.'" (Compl. ¶ 165.)

### B.  Rochelle Joyner

Plaintiff Rochelle Joyner was hired by Defendant for the position of Environmental Analyst, and has served in that position for at least nine years.  (Compl. ¶¶ 54-55.)  Joyner was notified by Defendant that she would not be reclassified as a Staff Service Engineer, and therefore would not be eligible for salary adjustments or promotions, until she received a degree in engineering.  (Id. at ¶¶ 56, 58.)  Joyner received a Masters of Engineering, but was not reclassified.  (Id. at ¶ 57.)  Joyner alleges that Caucasian employees without engineering degrees have been reclassified as Staff Service Engineers.  (Id. at ¶ 58.)  Joyner is the only employee in her department classified as an Environmental Analyst.  (Id.)

### C.  Annette Barry-Smith

Plaintiff Annette Barry-Smith has been employed by Defendant as a Project Manager for at least the last five years.  (Compl. ¶¶ 112-13.)  In July 2005, Barry-Smith "applied for the position of Principal Property Representative." (Id. at ¶ 114.)  Defendant informed Barry-Smith, around July 20, 2005, that she would not be promoted into the position.  (Id. at ¶ 115.)

Later, Barry-Smith applied and interviewed for another position.  (Id. at  ¶ 116.) Allegedly, Defendant notified Barry-Smith that her resume was removed from the applicant pool without further explanation.  (Id. at ¶ 116.)

---

submitted in these papers by Defendant, is July 19, 2005.  (Def.'s Mot. to Dismiss Ex. A 6.)

### D. **Bonnie L. Ford**

Plaintiff Bonnie Ford has been employed by Defendant in the position of Management Associate since 2002.  (Compl. ¶ 148.)  Ford alleges that she made numerous requests to be given permanent status, but was denied.  (Id. at ¶ 150.)

In August and September 2004, Ford applied for several positions, but was not promoted. (Id. at ¶ 151.)  Ford alleges that a Caucasian employee was placed in each position.  (Id. at ¶ 151.)

### E. **Ronald Smith, Neil W. Skelton, Robert A. Coplin, and Judith A. Samuel**

Plaintiffs Ronald Smith, Neil Skelton, Robert Coplin, and Judith Samuel are employed by Defendant as a Financial Analyst, Network Connections Supervisor, Senior Financial Analyst, and Project Manager, respectively.  (Compl. ¶¶ 70, 84, 98, 130.)  These Plaintiffs have all applied for promotions with Defendant (Id. at ¶¶ 71, 85, 99, 132-33), but have not been promoted (Id. at ¶¶ 72, 86, 100, 134).  Plaintiffs each allege that a Caucasian employee was promoted to the vacant position in each instance.  (Id. at ¶¶ 72, 86, 100, 134.)

## III. **DISCUSSION**

### A. **Legal Standard Governing Motion to Dismiss**

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'"  Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1959 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957), while abrogating the decision in other respects).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a

6

cause of action's elements will not do." <u>Twombly</u>, 127 S. Ct. at 1959. "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." <u>Id.</u>

Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss should be granted if the plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face." <u>Twombly</u>, 127 S. Ct. at 1960. A complaint should be dismissed only if the alleged facts, taken as true, fail to state a claim. <u>See</u> <u>In re Warfarin Sodium</u>, 214 F.3d 395, 397-98 (3d Cir. 2000).

On a motion to dismiss for failure to state a claim, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party. <u>See</u> <u>Oshiver v. Levin, Fishbein, Sedran & Berman</u>, 38 F.3d 1380, 1384-85 (3d Cir. 1994). While a court will accept well-pled allegations as true for the purposes of the motion, it will not accept unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. <u>See</u> <u>Morse v. Lower Merion Sch. Dist.</u>, 132 F.3d 902, 906 n.8 (3d Cir. 1997). All reasonable inferences, however, must be drawn in the plaintiff's favor. <u>See</u> <u>Sturm v. Clark</u>, 835 F.2d 1009, 1011 (3d Cir. 1987). Moreover, the claimant must set forth sufficient information to outline the elements of his or her claims or to permit inferences to be drawn that the elements exist. <u>See</u> <u>Fed. R. Civ. P. 8(a)(2)</u>; <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46, abrogated on other grounds in <u>Twombly</u>, 127 S. Ct. at 1955. "The defendant bears the burden of showing that no claim has been presented." <u>Hedges v. United States</u>, 404 F.3d 744, 750 (3d Cir. 2005).

In adjudicating a motion to dismiss, a court generally may not consider matters extraneous to the pleadings without "converting" the motion to dismiss into a motion for

summary judgment.  In re Rockefeller Ctr. Props., Inc. Sec. Litig., 184 F.3d 280, 287 (3d Cir.

1999).  A court may, however, "consider certain narrowly defined types of material without

converting the motion to dismiss" including, "a 'document *integral to or explicitly relied upon* in

the complaint.'"  Id. (quoting In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d

Cir. 1997)) (emphasis in original).  A court may also consider "an 'undisputedly authentic

document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims

are based on the document.'"  Id. (quoting PBGC v. White Consol. Indus., 998 F.2d 1192, 1196

(3d Cir. 1993)).[5]

**B.   Plaintiffs Have Failed to State a Cause of Action Under 42 U.S.C. §§ 1985 and**

**1986, and NJLAD**

Defendant contends that Plaintiffs failed to state cognizable claims under §§ 1985 and

1986, and the NJLAD.  Plaintiffs concede Defendant's position.  (Pls.' Br. in Opp. to Def.'s Mot.

to Dismiss 1.)  Even if Plaintiffs had not made this concession, this Court would still have found

that Plaintiffs failed to allege facts sufficient to support a conspiracy claim under §§ 1985 and

1986.  Also, the NJLAD does not apply to Defendant Port Authority.  Plaintiffs' claims under §§

1985 and 1986, and the NJLAD, are therefore, dismissed.

---

[5] The document submitted by Defendant with its brief in support of its motions may only be considered by this Court if it is "*integral to or explicitly relied upon* in the [C]omplaint."  Id. (quoting In re Burlington Coat Factory Sec. Litig., 114 F.3d at 1426) (emphasis in original)). Exhibit A to Defendant's Motion for Partial Dismissal of the Complaint and for a More Definite Statement is a copy of Plaintiff Evans' charge of discrimination with the EEOC.  This charge of discrimination is integral to Plaintiffs' Title VII claims and is explicitly relied upon in the Complaint.  (Compl. ¶¶ 164-65.)  This Court may, therefore, consider the charge of discrimination in deciding the pending motion.

## 1. *42 U.S.C. §§ 1985 and 1986*

"To state a claim under § 1985(3)[6], a plaintiff must allege: (1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons of the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States." Cranbury Brook Farms v. Twp. of Cranbury, 226 Fed. App'x 92, 95 n.4 (3d Cir. 2007) (citing Griffin v. Breckenridge, 403 U.S. 88, 102-03 (1971)). Plaintiffs fail to meet the first requirement - alleging a conspiracy.

Plaintiffs name only one defendant in their Complaint. (Compl. ¶ 11) (naming as a party "Defendant Port Authority of New York and New Jersey.")  In naming the Port Authority as the

---

[6] Plaintiffs' Complaint alleges violations of § 1985 without specifying which subsection they invoke. (Compl. ¶¶ 46, 62, 76, 90, 104, 122, 139, and 156.)  42 U.S.C. § 1985(1) prohibits preventing an officer of the United States from performing official duties, while 42 U.S.C. § 1985(2) prohibits the intimidation of any party, witness, or juror of any court of the United States.  42 U.S.C. § 1985(3), which logically is the only applicable section here, provides:

> If two or more persons in any State or Territory conspire, or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice-President, or as a member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

defendant, Plaintiffs allege that "the defendant Port Authority of New York and New Jersey, its employees, agents and/or servants" has "deprived [Plaintiffs of their] right to make and enforce contracts and to the full and equal benefits of defendant Port Authority's regulations and all laws and proceedings for the security of [Plaintiffs'] employment because of [Plaintiffs'] race in violation of 42 U.S.C. [§] 1985 . . . . " (Id. at ¶¶ 46, 62, 76, 90, 104, 122, 139, and 156.)   These statements do not allege the existence of a conspiracy under 42 U.S.C. § 1985(3).

"[A] *section 1985(3)* conspiracy between a corporation and one of its officers may [only] be maintained if the officer is acting in a personal, as opposed to official, capacity, or if independent third parties are alleged to have joined the conspiracy." Robison v. Canterbury Vill., Inc., 848 F.2d 424, 431 (3d Cir. 1988); see also Gen. Refractories Co. v. Fireman's Fund Ins. Co., 337 F.3d 297, 313 (3d Cir. 2003) (stating that "a conspiracy between a corporation and an officer . . . may exist only 'if the officer is acting in a personal, as opposed to official, capacity.' That is, an exception exists 'when the employees have acted for their sole personal benefit.'") (citations omitted).

Plaintiffs have made no allegations that Defendant conspired with third parties, or that any of Defendant's employees acted outside of their official capacity.  Plaintiffs do not even name the specific employees alleged to have been involved in the conspiracy.  Because Plaintiffs have not alleged the existence of a conspiracy sufficiently, their § 1985 claims will be dismissed.

Similarly, "[b]ecause no claim can be maintained under *section 1986* unless a cause of action has been established under *section 1985*," Plaintiffs § 1986 claims will also be dismissed. Robison, 848 F.2d at 431 n.10 (citing Rogin v. Bensalem Twp., 616 F.2d 680, 696 (3d Cir. 1980)).

## 2. *NJLAD*

Defendant argues that Defendant Port Authority, as a bi-state agency[7], is not subject to the NJLAD.  (Def.'s Br. in Supp. Mot. to Dismiss 10.)  Defendant's assertion is correct.  The "[NJ]LAD may only be applied to the Port Authority if New York has concurrently adopted the same legislation [as New Jersey,] or if the states have similar legislation which purport to apply to the Port Authority.  Since neither of these situations is present, [NJ]LAD may not be applied to the Port Authority."  <u>King</u>, 909 F. Supp. at 945.

New York's Human Rights Law is "substantively similar" to NJLAD.  <u>Id.</u> at 946.  Therefore, in order for the NJLAD to be applicable here, the legislation must purport to apply to the Port Authority.

> The absence from the text and legislative history of [New York's] Human Rights Law and [NJ]LAD of any mention of [the Port Authority], in addition to the absence of an express statement by either state legislature that it was amending or supplementing the provisions of the Compact and that the law would take effect upon the enactment of identical legislation in the opposite state, seems to indicate that neither New York nor New Jersey legislatures intended the laws to apply to the internal operations of [the Port Authority].

<u>Settecase v. Port Auth. of N.Y. and N.J.</u>, 13 F. Supp. 2d 530, 535 (S.D.N.Y. 1998) (citing <u>Baron v. Port Auth. of N.Y. and N.J.</u>, 968 F. Supp. 924, 929 (S.D.N.Y. 1997)).  Plaintiffs' NJLAD claims are, therefore, dismissed because Defendant Port Authority is not subject to the jurisdiction of the NJLAD.

---

[7] "The Port Authority was created in 1921 by a Compact between New York and New Jersey, which was consented to by Congress.  The goal of the Compact is to develop public transportation, terminal and other facilities of commerce within the Port of New York District."  <u>King v. Port Auth. of N.Y. and N.J.</u>, 909 F. Supp. 938, 943 n.4 (D.N.J. 1995), <u>aff'd</u>, 106 F.3d 385 (3d Cir. 1996).

### C. **Defendant Port Authority May Not Be Assessed Punitive Damages**

Defendant claims that as "a hybrid entity with substantial connections to the government" it is, therefore, immune from punitive damages.  (Def.'s Br. in Supp. Mot. to Dismiss 19) (citing King, 909 F. Supp. at 947).  Plaintiffs, on the other hand, rely on Hess v. Port Auth. Trans-Hudson Corp., 513 U.S. 30 (1994), in asserting that Defendant does not qualify for immunity from punitive damages.  (Pls.' Br. in Opp. to Def.'s Mot. to Dismiss 9.)  This Court finds that Plaintiffs' reliance on Hess is misplaced, and that Defendant's motion to dismiss, with respect to Plaintiffs' punitive damages claims, should be granted.

Plaintiffs' reliance on Hess "fails to account for the fact that the issues in [the case *sub judice* and Hess] -- immunity from punitive damages and immunity from suit under the *Eleventh Amendment*, respectively -- implicate different considerations."  Ryduchowski v. Port Auth. of N.Y. and N.J., No. 96-5589, 1998 U.S. Dist. LEXIS 18558, at *41 (E.D.N.Y. Nov. 19, 1998) (emphasis in original); see also Evans v. Port Auth. of N.Y. and N.J., 273 F.3d 346, 357 n.7 (3d Cir. 2001) (stating that "[w]e agree with other District Courts which have considered the applicability of Hess to punitive damages awards.  These courts have held that the question considered by the Supreme Court in Hess -- immunity from suit in federal court under the *Eleventh Amendment* -- presents different considerations from the question of a public authority's immunity from punitive damages under *Section 1983*.") (emphasis in original).  For this reason, Hess is inapposite.

"[T]he primary purposes behind awarding punitive damages are punishing the wrongdoer and deterring future violations.  Awarding punitive damages against the Port Authority would accomplish neither of these goals."  Ryduchowski, 1998 U.S. Dist. LEXIS at *42.  Defendant

Port Authority, as a hybrid entity has many of the same characteristics of a municipality.  Evans, 273 F.3d at 356; see also Bolden v. Se. Pa. Transp. Auth., 953 F.2d 807, 830 (3d Cir. 1991) (holding that although the Southeastern Pennsylvania Transportation Authority was "not a governmental unit in the traditional sense, [] it shares many characteristics with federal, state, and local governmental agencies.").

The Supreme Court has held that municipalities are immune from punitive damages under 42 U.S.C. § 1983 because such an award "'punishes' only the taxpayers, who took no part in the commission of the tort," and because "it is far from clear that municipal officials, including those at the policymaking level, would be deterred from wrongdoing. . . . "  City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 267-68 (1981) (citations omitted).

Using the same rationale as the Fact Concerts court, the Third Circuit has held that the Port Authority "may not be assessed punitive damages."  Evans, 273 F.3d at 357.  "Although taxes would not be affected by the award of punitive damages against the Port Authority because it receives no tax revenues and is financially independent of New York and New Jersey, an award of punitive damages might result in increased tolls, fares, and other expenses borne by the public generally."  Id. (citing Shifa Servs., Inc. v. Port Auth. of N.Y. and N.J., No. 96-CV-1361, 1997 WL 563301, at *5 (S.D.N.Y. Sept. 5, 1997); see also Bolden, 953 F.2d at 831 (stating that "[a]warding punitive damages against [the transportation authority] might result in increased taxes or fares and thus punish taxpayers and users of mass transportation . . . . ").  Because public policy considerations would not be served by assessing punitive damages against Defendant, and the law of this Circuit prevents imposing punitive damages against municipalities and other agencies with substantial connections to the government, this Court will dismiss Plaintiffs'

punitive damages claims.

### D. **42 U.S.C. § 1981 Does Not Create an Independent Cause of Action For Claims Against State Actors For Alleged Violations of Federal Rights**

In their Complaint, Plaintiffs allege violations of 42 U.S.C. § 1981.[8] (Compl. ¶¶ 46, 62, 76, 90, 104, 122, 139, and 156.)  Defendant argues that Plaintiffs' § 1981 claims should be dismissed because § 1983 "provides the exclusive remedy for damages against a state actor[9] for claims which arise under Section 1981."  (Def.'s Br. in Supp. Mot. to Dismiss 6.)  In support of its position, Defendant cites Oaks v. City of Philadelphia, 59 Fed. App'x 502 (3d Cir. 2003), which appears to reaffirm the Supreme Court's holding in Jett v. Dallas Independent School District, 491 U.S. 701, 735 (1989), that § 1983 is the exclusive remedy for § 1981 claims against

---

[8] 42 U.S.C. § 1981 provides:

(a) Statement of equal rights. All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

(b) "Make and enforce contracts" defined. For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

(c) Protection against impairment. The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

[9] For purposes of §§ 1981 and 1983, Defendant Port Authority is considered to be a state actor.  Cumberbatch v. Port Auth. of N.Y. and N.J., No. 03-749, 2006 U.S. Dist. LEXIS 88853, at *21 (S.D.N.Y. Dec. 5, 2006).

14

state actors.

Plaintiffs counter that Congress overruled the Supreme Court's holding in Jett when it amended § 1981 in 1991.  (Pls.' Br. in Opp. Def.'s Mot. to Dismiss 4.)  Plaintiffs claim that the plain language of the 1991 amendments, which add subsections (b) and (c) to § 1981, "appl[ies] the prohibitions of Section 1981 to state action."  (Id.)  Further, Plaintiffs argue that the Circuits are split regarding this matter.  (Id. at 3.)

The Third Circuit has yet to address this issue directly.  However, it is implicit in the Oaks decision that the 1991 amendments did not overrule the Jett decision.  The Third Circuit quotes the Jett court in analyzing how a party may prevail on a § 1981(b) claim against a local government, and states that the party must prove that the violation "was caused by a custom or policy within the meaning of Monell and subsequent cases."  59 Fed. App'x at 503 (emphasis in original).  This requirement is consistent with the standard for § 1983 causes of action against municipalities.  Id.  Further, other courts in this Circuit rely on the Oaks decision in holding that the 1991 amendments did not overrule Jett.  See Gibson v. City of Phila., No. 07-0318, 2007 U.S. Dist. LEXIS 37786, at *5 (E.D. Pa. May 23, 2007) (dismissing the plaintiffs' complaint, which alleged only violations of § 1981, because "[w]hen this Court has addressed this issue in the past, we have treated the plaintiffs' § 1981 claims as merged into their § 1983 claims."); Fortes v. Boyertown Area Sch. Dist., No. 06-0878, 2006 U.S. Dist. LEXIS 77039, at *32 (E.D. Pa. Oct. 23, 2006) (holding that "Section 1981 claims merge with Section 1983 because a plaintiff must allege the same facts to prove both claims.").

Similarly, other Circuits agree that the 1991 amendments to § 1981 do not supersede the Jett decision and create an independent cause of action.  See Patterson v. County of Oneida, 375

15

F.3d 206 (2d Cir. 2004) (stating that § 1983 "provides 'a method for vindicating federal rights elsewhere conferred,' such as those conferred by § 1981.  Indeed, the 'express cause of action for damages created by § 1983 constitutes the *exclusive* federal remedy for violation of the rights guaranteed in § 1981 by state governmental units . . . . " ) (citations omitted); Dennis v. County of Fairfax, 55 F.3d 151, 156 (4th Cir. 1995) (upholding Jett and stating that "when suit is brought against a state actor, § 1983 is the 'exclusive federal remedy for violation of the rights guaranteed in § 1981.'") (citations omitted); Oden v. Oktibbeha County, 246 F.3d 458, 463 (5th Cir. 2001) ("We are persuaded that the conclusion in *Jett* remains the same after Congress enacted the 1991 amendments. . . . Section 1983 remains the only provision to expressly create a remedy against persons acting under color of state law.  The addition of subsection (c) creates no more of a need for the judiciary to imply a cause of action under § 1981 against state actors than existed when the Supreme Court decided *Jett.*") (emphasis in original); Bolden v. City of Topeka, 441 F.3d 1129, 1137 (10th Cir. 2006) (holding that because "[t]he amendments to § 1981 do not expressly provide a private cause of action," all claims "against state actors for violations of § 1981 must be brought under § 1983."); Butts v. County of Volusia, 222 F.3d 891, 892 (11th Cir. 2000) (concluding that "the amendments did not change § 1981 and § 1983 contains the sole cause of action against state actors for violations of § 1981.").

The Ninth Circuit, and various district courts, however, have held otherwise.  See Fed'n of African Am. Contractors v. City of Oakland, 96 F.3d 1204, 1210-14 (9th Cir. 1996) (using the four-factor test enunciated in Cort v. Ash, 422 U.S. 66 (1975), to find that § 1981 creates an implied cause of action against state actors); Powell v. City of Pittsfield, 143 F. Supp. 2d 94, 112 (D. Mass. 2001) (relying on Fed'n of African Am. Contractors in holding that the 1991

amendments to § 1981 create an implied cause of action against state actors); <u>Jefferson v. City of Chi.</u>, No. 97-4895, 1999 U.S. Dist. LEXIS 2433, at *9 (N.D.Ill. Feb. 24, 1999) (holding that "§ 1981(c) does create a direct cause of action under § 1981 against governmental entities.").

Despite the Ninth Circuit's reasoning in <u>Federation of African American Contractors</u>, this Court is persuaded by the holdings in the majority of the Circuits.  As the Fifth, Tenth, and Eleventh Circuits have discussed, the legislative history relating to the 1991 amendments, makes clear that Congress did not intend to overrule <u>Jett</u>.  <u>See Oden</u>, 246 F.3d at 463-64 (stating that the legislative history discloses Congress' intent only to codify <u>Runyon v. McCrary</u>, 427 U.S. 160 (1976), which holds that § 1981 implies a cause of action against private actors, and not to overrule <u>Jett</u>).  In fact, Congress made no mention of the Supreme Court's <u>Jett</u> decision.  <u>Bolden</u>, 441 F.3d at 1136-37 (stating that the absence of any mention of <u>Jett</u> in the legislative history reveals that Congress did not intend to reverse <u>Jett</u>, as "Congress does not overrule recent Supreme Court precedent so subtly."); <u>Butts</u>, 222 F.3d at 894 (stating that "Congress provided no indication that it contemplated creating a cause of action against state actors outside of § 1983, nor did it even mention the Supreme Court's opinion in <u>Jett</u>.").

This Court, therefore, holds that because Congress did not intend to create an independent cause of action against state actors for violations of 42 U.S.C. § 1981, as evidenced by the legislative history, Plaintiffs' § 1981 claims are merged with their § 1983 claims, and Defendant's motion to dismiss regarding the § 1981 claims is granted.

**E.  Evans' § 1983 Claims For Acts Occurring Before July 17, 2004 Are Time-Barred**

Defendant also contends that most of Plaintiff Evans' claims for lost promotions under § 1983 are barred by the applicable statute of limitations, and should therefore be dismissed.

(Def.'s Br. in Supp. Mot. to Dismiss 12.)  Evans, however, argues that the alleged acts of discrimination illustrate a  "continuing violation" on the part of the Defendant.  (Pls.' Br. in Opp. Mot. to Dismiss 7.)  Evans claims that the "continuing violation" theory, as an exception to the statute of limitations, preserves her claims under § 1983.  (Id. at 8-9.)

"Normally, the statute of limitations is a general defense that must be pleaded in the answer.  However, the Third Circuit allows an exception if 'the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations.'" Blades v. Burlington County, No. 02-3976, 2004 U.S. Dist. LEXIS 30343, at *31-32 (D.N.J. Aug. 3, 2004) (citing Worldcom, Inc. v. Graphnet, Inc., 343 F.3d 651, 657 (3d Cir. 2003)).

This Circuit permits raising a statute of limitations defense "in the context of a 12(b)(6) motion to dismiss 'where the complaint facially shows noncompliance with the limitations period and the affirmative defense clearly appears on the face of the pleading.'"  Id. at 32 (citing Robinson v. Johnson, 313 F.3d 128, 135 n.3 (3d Cir. 2002)).  Count I of the Complaint, describing Plaintiff Evans' claims of discrimination, "contains a [fairly] detailed factual account of instances where [s]he claims to have suffered discrimination . . . . "  Id.  Evans reports the instances of alleged discrimination in a time line fashion, and lists the approximate dates for most of her allegations.  (Compl. ¶¶ 21-41.)  Because most of the allegations in Count I of the Complaint "facially show[] non-compliance with the limitations period" this Court will address Defendant's statute of limitations defense in its 12(b)(6) motion to dismiss.  Robinson, 313 F.3d at 135 n.3.

The statute of limitations for § 1983 claims "is determined by the state statute of limitations regarding personal injuries."  Hanani v. N.J. Dep't of Envtl Prot., 205 Fed. App'x 71,

18

76 (3d Cir. 2006).  "For *section 1983* actions in New Jersey, 'that statute is *N.J.S.A. 2A:14-2*, which provides that an action for injury to the person caused by wrongful act, neglect, or default, must be convened within two years of accrual of the cause of action.'" O'Connor v. City of Newark, 440 F.3d 125, 126-27 (3d Cir. 2006) (emphasis in original).  Evans filed this Complaint on July 17, 2006; therefore, any of her claims under § 1983 that accrued prior to July 17, 2004 are barred.  Hanani, 205 Fed. App'x at 76; O'Connor, 440 F.3d at 127.

Count I of the Complaint lists eight incidents in which Evans was not promoted, and one incident in which her salary was not adjusted.[10]  (Compl. ¶¶ 24-41.)  Five of the alleged incidents

_____

[10] Evans alleges that:

(1) shortly after April 2002, she was denied a promotion to the position of Director of Government and Community Affairs, and that a white male was, instead, appointed to the position (Compl. ¶¶ 21-24, 28);

(2) "[i]n or about April of 2002," she was denied a promotion to the position of Manager of New Jersey Affairs, which was renamed to New Jersey Assistant Director of Government and Community Affairs, and that a white male was appointed to the position (Compl. ¶¶ 25-27);

(3) "[i]n or about December of 2002," she was denied a promotion to the position of New Jersey Assistant Director of Government and Community Affairs, and that a white male was appointed to the position (Compl. ¶¶ 29-32);

(4) shortly after December 2002, she was again denied a promotion to the position of Director of Government and Community Affairs, and that a white male was appointed to the position (Compl. ¶ 33);

(5) shortly after December 2002, she was again denied a promotion to the position of New Jersey Assistant Director of Government and Community Affairs (Compl. ¶¶ 34-35);

(6) in May 2004, (Def.'s Mot. to Dismiss Ex. A 12), she was awarded a Masters of Public Administration, but received no adjustment to her salary as a result of the degree (Compl. ¶ 36);

(7) "[i]n or about 2004," she was denied a promotion to the position of New York Assistant Director of Government and Community Affairs, and that a Hispanic male was appointed to the position (Compl. ¶¶ 37-38);

related to lost promotions, and the alleged lack of adjustment to her salary all occur prior to 2004. These six allegations (see infra n.10 (1)-(6)) are time-barred.  Two of the remaining three allegations (see infra n.10 (7)-(8)) of failure to promote occurred in 2004.  (Compl. ¶¶ 37-39.)  It is unclear from the Complaint whether these two incidents occurred prior to July 17, 2004; nonetheless, this Court, for purposes of dismissal for untimely filing, will assume that such allegations are not now time-barred.[11]  Finally, Evans' remaining failure to promote allegation (see infra n.10 (9)), having occurred after July 17, 2004, is permitted.

Plaintiff Evans contends, however, that the first six allegations are not time-barred because the continuing violation doctrine permits the aggregation of discrete acts that fall within and outside of the statute of limitations.  (Pls.' Br. in Opp. Mot. to Dismiss 7.)  Although Evans is correct in stating that the continuing violation doctrine creates an exception to the two-year statute of limitations for § 1983 claims, she is inaccurate in assuming that the exception applies to the present case.

This Circuit, following the Supreme Court's holding in National Railroad Passenger Corp. v. Morgan, 536 U.S. 101 (2002), has held that discrete acts, which are independently actionable, are time-barred if raised outside of the applicable statute of limitations.  Hanani, 205

_____

(8) "[i]n or about 2004," she was denied a promotion to the position of Acting Deputy Executive Director of Government and Community Affairs, and that a white male was appointed to the position (Compl. ¶ 39); and

(9) "[i]n April of 2005," she was again denied a promotion to the position of Director of Government and Community Affairs, and that a white female was appointed to the position (Compl. ¶ 41).

[11] This Court orders Evans to provide a more definite statement regarding these allegations. (See infra Section III.H.2.)

Fed. App'x at 78; O'Connor, 440 F.3d at 127.  In other words, "[e]ach discrete discriminatory act starts a new clock for filing charges alleging the act."  Morgan, 536 U.S. at 113.  The Morgan court also "provides fairly precise guidance as to what sorts of acts are 'discrete.'  The Court . . . observes that 'discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify.'"  O'Connor, 440 F.3d at 127 (citing Morgan, 536 U.S. at 113); see also Hanani, 205 Fed. App'x at 78.  This list is not exhaustive.  Id.  Because the Supreme Court specifically recognizes a failure to promote as being a discrete act, each of Evans' claims prior to 2004 is not subject to the continuing violation exception.  These claims are, therefore, time-barred.[12]

**F.  Evans' Title VII Claims For Acts Occurring Before January 20, 2005 Are Time-Barred**

Defendant similarly argues that most of Evans' Title VII claims are barred by the statute of limitations.  (Def.'s Br. in Supp. Mot. to Dismiss 15.)  Evans again counters that the alleged discriminatory acts that fall outside of the applicable statutory period are preserved under the continuing violation exception.  (Pls.' Br. in Opp. Mot. to Dismiss 7-8.)  As addressed above, this Court holds that the continuing violation doctrine is inapplicable to the discrete acts alleged in Count I of the Complaint.  O'Connor, 440 F.3d at 127 (citing Morgan, 536 U.S. at 113); see also Hanani, 205 Fed. App'x at 78.

"A Title VII plaintiff must file a complaint with the EEOC within 180 days of when she knew or had reason to know of the alleged unlawful employment action or, if she has already

---

[12]   This Court also considers Evans' claim regarding lack of salary adjustment as a discrete act.  It is also, therefore, dismissed as being time-barred.

filed a charge with the relevant state or local equal employment agency, within 300 days of that action."  Minott v. Port Auth. of N.Y. and N.J., 116 F. Supp. 2d 513, 522 (S.D.N.Y. 2000); see also Morgan, 536 U.S. at 109.  "In this case, the applicable time period is 180 days because neither the New York nor New Jersey state anti-discrimination agencies have jurisdiction over the Port Authority."  Id. (citing King v. Port Auth. of N.Y. and N.J., 909 F. Supp. 938 (D.N.J. 1995), aff'd, 106 F.3d 385 (3d Cir. 1996); Vernon v. Port Auth. of N.Y. and N.J., 154 F. Supp. 2d 844, 850 (S.D.N.Y. 2001) (stating that "[b]ecause there is no state or local agency that has jurisdiction over claims against Port Authority, the 300-day rule does not apply to cases in which Port Authority is a party.").[13]

Evans filed her charge of discrimination with the EEOC on July 19, 2005.  (Def.'s Mot. to Dismiss Ex. A 6.)  Applying the 180 days statute of limitations, therefore, requires that any alleged discriminatory act occurring prior to January 20, 2005 is time-barred.  Plaintiff Evans alleges only one act occurring within this statutory period.  (Compl. ¶¶ 21-41.)  Evans claims that "[i]n April of 2005," she was denied a promotion to the position of Director of Government and Community Affairs, and that a white female with no prior experience with Defendant was instead appointed.  (Compl. ¶ 41).  Therefore, each of Evans' other claims under Title VII are time-barred, and accordingly are dismissed.

---

[13] This Court agrees with the holding of the Southern District of New York, and other courts, that the 300 days statute of limitations, applicable to some Title VII claims, does not apply to Evans because the New Jersey Division on Civil Rights, the agency responsible for investigating discrimination complaints pursuant to the NJLAD, does not have jurisdiction over Defendant.

### G.  **Plaintiffs Joyner, Smith, Skelton, Coplin, Barry-Smith, Samuel, and Ford Failed to Exhaust Administrative Remedies For Their Title VII Claims**

Defendant finally suggests that because Plaintiffs Joyner, Smith, Skelton, Coplin, Barry-Smith, Samuel, and Ford have not filed individual charges of discrimination with the EEOC, they are barred from asserting their Title VII claims.  (Def.'s Br. in Supp. Mot. to Dismiss 17.)  Defendant responds that although the "single filing rule" creates an exception to the exhaustion requirement, it is not applicable to the present case because this is not a class action.  (Id.)  Plaintiffs' retort is that they have met the requirements of the exception, and provided adequate notice to Defendant of class-based allegations of discrimination.  (Pls.' Br. in Opp. Mot. to Dismiss 5-6.)

In order to bring a cause of action under Title VII, a party is required to have first brought a charge of discrimination with the EEOC, and provided notice of the charge to the defendant.  42 U.S.C. § 2000e-5(e)(1) ("A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred and notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) shall be served upon the person against whom such charge is made within ten days thereafter . . . ").  "The single filing (or 'piggybacking') rule is a judge-made exception to the requirement that plaintiffs exhaust their administrative remedies prior to filing suit."  Ruehl v. Viacom, Inc., No. 06-1463, 2007 U.S. App. LEXIS 21468, at *24 (3d Cir. Sept. 7, 2007) (citing Commc'ns Workers of Am. v. N.J. Dep't of Pers., 282 F.3d 213, 217 (3d Cir. 2002)).  This exception is applicable only to class and collective actions.  Id. at 25 (citing Lusardi v. Lechner, 855 F.2d 1062, 1066 (3d Cir. 1988)).

23

Plaintiff Evans filed a charge of discrimination with the EEOC on July 19, 2005.  (Def.'s Mot. to Dismiss Ex. A 6.)  The remaining Plaintiffs did not file individual charges of discrimination with the EEOC for the allegations stated in the Complaint.  Instead, they seek now to join in the present action, pursuant to the single filing rule.  (Compl. ¶ 165.)  In order to do so, Plaintiffs must first show that Evans "filed a timely charge with the EEOC that gives the employer notice that class-wide discrimination is alleged."  Whalen v. W.R. Grace & Co., 56 F.3d 504, 506 (3d Cir. 1995) (citing Lusardi, 855 F.2d at 1078)).  Second, Plaintiffs must show that the instant action is on behalf of others similarly situated, or in other words is a class action. Commc'ns Workers of Am., 282 F.3d at 217 (stating that "[t]here is no suggestion that filing a charge with allegations broad enough to support a subsequent class action lawsuit alleviates the burden of filing the class action itself, with the attendant requirement of class certification."); Whalen, 56 F.3d at 507 (same).

As stated above in the preceding subsection, Plaintiff Evans timely filed a charge of discrimination only with respect to the allegation that she was denied a promotional opportunity in April 2005.  (See Compl. ¶ 41.)  This filing is sufficient to encompass the remaining Plaintiffs' Title VII claims if the charge alleged class-wide discrimination.  It is not required, however, that the charge of discrimination "use the words 'similarly situated' or allege specifically that a class action is going to be brought . . . " Lusardi, 855 F.2d at 1078.  The charge must simply provide the Defendant notice of class discrimination.  Id. at 1077-78.  Evans' charge of discrimination meets these requirements.

In a memorandum attached to Evans' charge of discrimination she states that the memorandum is "an effort to cite examples of how the PA in its arrogance continues to flagrantly

discriminate against ethnic minorities," and that Evans "used [her] own situation" as an example
of such discrimination.  (Def.'s Mot. to Dismiss Ex. A 11.)  Further, Evans states that "meetings
were scheduled to discuss the documented disparities in the hiring practices, salaries, and
promotions of black employees at the PA as compared to that of white employees."  (Id.)  These
statements clearly provide Defendant adequate notice of class-wide allegations of discrimination.
Notwithstanding Evans' inclusion of the discrimination suffered by others, Plaintiffs cannot
show that the case *sub judice* is a class action.

As Defendant has accurately pointed out, "[t]he starting point for a class action is a
complaint that alleges that the lawsuit is a class action." 5 JAMES WM. MOORE ET AL., MOORE'S
FEDERAL PRACTICE § 23.61[1] (3d ed. 1997).  "Some courts have stated or implied that, in the
complaint, the plaintiff must allege specific facts demonstrating that all of the requirements for
certification of a class action can be or have been fulfilled.  These cases suggest that a plaintiff
may not create a class action by using that label in the pleadings or even by including conclusory
allegations as to the Rule 23 requirements."  Id.

Plaintiffs have not made any attempt to allege that this is a class action.  (See generally,
Compl.)  The Complaint does not allege, anywhere, that the lawsuit is a class action, and
Plaintiffs do not attempt to allege facts relevant to satisfying the requirements for class
certification.  (Id.)  Plaintiffs argue, however, that their Complaint is sufficient because
Defendant had adequate notice of allegations of systemic discrimination against African-
Americans.  (Pls.' Br. in Opp. to Def.'s Mot. to Dismiss 6.)  While it is true that general
averments of discrimination are present, this Court is not inclined to extend the single filing rule
to non-class actions simply because a defendant had notice of allegations of class-wide

25

discrimination.  Plaintiffs' own case, <u>EEOC v. Conectiv</u>, requires more, and states that subsequent to a timely filed charge of discrimination alleging class-wide discrimination, a plaintiff must file a class action.  No. 05-3389, 2006 U.S. Dist. LEXIS 33410, at *9 (E.D. Pa. May 25, 2006) (stating that "'[u]nder the single-filing rule, a plaintiff who has not filed an EEOC charge within the requisite time period can join a class action without satisfying [the filing requirement] if the original EEOC charge filed by the plaintiff who subsequently filed a class action had alleged class based discrimination in the EEOC charge.'  If there is no class action and plaintiffs choose to bring suit individually, they must first satisfy the prerequisite of filing a timely charge with the EEOC.") (citations omitted).

Because Plaintiffs' Complaint fails to allege that this lawsuit is a class action on behalf of others similarly situated, and Evans is the only Plaintiff with a timely filed EEOC charge of discrimination, the remaining Plaintiffs' Title VII claims must be dismissed.

### H.  **Plaintiffs Are Ordered to Provide Dates for the Alleged Acts of Discrimination**

#### *1. Legal Standard Governing Motion for a More Definite Statement*

Rule 12(e) of the Federal Rules of Civil Procedure provides that a defendant may move for a more definite statement "[i]f a pleading . . . is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading."  FED. R. CIV. P. 12(e).  "The motion shall point out the defects complained of and the details desired."  <u>Id.</u>  "When a complaint fashioned under a notice pleading standard does not disclose the facts underlying a plaintiff's claims for relief, the defendant cannot reasonably be expected to frame a proper, fact-specific . . . defense. . . . The Rule 12(e) motion for a more definite statement is perhaps the best procedural tool

available to the defendant to obtain the factual basis underlying a plaintiff's claim for relief."
Thomas v. Indep. Twp., 463 F.3d 285, 301 (3d Cir. 2006).

A defendant making a Rule 12(e) motion may join that motion with a Rule 12(b)(6) motion to dismiss. FED. R. CIV. P. 12(g) ("A party who makes a motion under this rule may join with it any other motions herein provided for and then available to the party."). "When presented with an appropriate Rule 12(e) motion for a more definite statement, the district court shall grant the motion and demand more specific factual allegations from the plaintiff concerning the conduct underlying the claims for relief." Thomas, 463 F.3d at 301.

### 2. Plaintiffs' Complaint Fails To Disclose the Facts Underlying Their Claims

Defendant moves for a more definite statement with regard to specific dates on which the alleged discriminatory acts occurred. Defendant argues that such motion, if granted, would aid in the efficient administration of this case by identifying which, if any, discriminatory allegations are time-barred. (Def.'s Br. in Supp. Mot. to Dismiss 21-22.) Plaintiffs, on the other hand, relying on Wheeler v. United States Postal Service, 120 F.R.D. 487 (M.D. Pa. 1987), argue that Defendant's motion is an attempt "to subvert the discovery process." (Pls.' Br. in Opp. Mot. to Dismiss 10.) For the following reasons, this Court is persuaded by Defendant's argument, and therefore, grants the motion for a more definite statement.

Rule 8 of the Federal Rules of Civil Procedure requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Although the Rule does not require fact pleading, it does require that a complaint "provide fair notice of what the plaintiff's claim is and the grounds upon which it rests." Scott v. Rowan County Dep't of Soc. Servs., No. 06-6083, 2007 U.S. Dist. LEXIS 67749, at *3 (D.N.J.

27

Sept. 12, 2007) (citations omitted).  It also "requires more than labels and conclusions. . . ." Twombly, 127 S.Ct. at 1959.  Plaintiffs' Complaint does not sufficiently provide Defendant notice of the grounds upon which their claims rest.

Plaintiffs provide varying degrees of detail surrounding each alleged act of discrimination.  For example, Plaintiffs Evans (in most of her allegations) and Barry-Smith provide the approximate months and years in which the alleged acts of discrimination against them occurred.  (Compl. ¶¶ 21-36, 41, 114-15.)  On the other hand, Plaintiffs Joyner, Ford, Smith, Skelton, Coplin, and Samuel provide no specific dates or approximate time periods within which these alleged acts of discrimination occurred.  Defendant is not expected to speculate about these details in attempting to formulate a defense.  Thomas, 463 F.3d at 301.

Plaintiffs argue that requiring them to provide the dates for each alleged discriminatory act will subvert discovery.  (Pls.' Br. in Opp. Mot. to Dismiss 10.)[14]  This Court disagrees. Requiring Plaintiffs to provide dates will assist Defendant in framing a defense, and increase the efficiency with which this Court resolves the dispute between the parties.  As such, Plaintiffs are ordered to amend their Complaint, within thirty (30) days, to include the following: (1) specific dates, including the month and approximate day, on which Evans was allegedly denied promotions in 2004 (see Compl. ¶¶ 37-39.); (2) specific dates, including the month and approximate day, on which Joyner was allegedly denied reclassification; (3) specific dates, including the month and approximate day, on which Ford was allegedly denied permanent status;

---

[14] Plaintiffs rely on Wheeler in arguing against Defendant's Rule 12(e) motion.  Unlike the instant case, the plaintiffs in Wheeler had alleged the general time period in which the alleged violations occurred.  120 F.R.D. at 488.  Here, some Plaintiffs failed to allege any time period. Wheeler, is therefore, distinguishable.

and (4) specific dates, including the month and approximate day, on which Smith, Skelton, Coplin, and Samuel, were allegedly denied promotions.

## IV.  CONCLUSION

For the reasons stated above, this Court grants Defendant's motion for partial dismissal of the Complaint, pursuant to Fed. R. Civ. P. 12(b)(6), and for a more definite statement, pursuant to Fed. R. Civ. P. 12(e).  Consequently, Plaintiffs' claims pursuant to 42 U.S.C. §§ 1985 and 1986 are dismissed, without prejudice; Plaintiffs' claims pursuant to the New Jersey Law Against Discrimination, N.J. STAT. ANN. §§ 10:5-1 to -49 (2007) are dismissed, with prejudice; Plaintiffs' punitive damages claims are dismissed, with prejudice; Plaintiffs' claims pursuant to 42 U.S.C. § 1981 are merged with their 42 U.S.C. § 1983 claims, and the § 1981 claims are dismissed, with prejudice; Plaintiff Evans' claims pursuant to 42 U.S.C. § 1983, for acts occurring prior to July 17, 2004, are dismissed, with prejudice; Plaintiff Evans' claims pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to -e-17, for acts occurring prior to January 20, 2005 are dismissed, with prejudice; and Plaintiffs Joyner, Smith, Skelton, Coplin, Barry-Smith, Samuel, and Ford's claims pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to -e-17, are dismissed, with prejudice.  Therefore, the remaining claims consist of: (1) Plaintiff Evans' claim pursuant to 42 U.S.C. § 1983, for three alleged acts occurring in 2004 and April 2005; (2) Plaintiff Evans' claim pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to -e-17, for one alleged act occurring in April 2005; and (3) Plaintiffs Joyner, Smith, Skelton, Coplin, Barry-Smith, Samuel, and Ford's claims pursuant to 42 U.S.C. § 1983.

Dated: October 18, 2007

     S/Joseph A. Greenaway, Jr.         
JOSEPH A. GREENAWAY, JR., U.S.D.J.