**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

JANET L. EVANS, ROBERT A. COPLIN,
ANNETTE BARRY-SMITH, ROCHELLE
JOYNER, RONALD SMITH, BONNIE L. FORD,
NEIL SKELTON, and JUDITH A. SAMUEL,

                Plaintiffs,

                v.

PORT AUTHORITY OF NEW YORK and
NEW JERSEY, its employees, agents and/or
servants,

                Defendant.
_____

Hon. Garrett E. Brown, Jr.

Civil Action No. 06-3239 (GEB)

**MEMORANDUM OPINION**

**BROWN**, Chief Judge:

This matter comes before the Court on the motion for summary judgment (Doc. No. 64) filed by Defendant Port Authority of New York and New Jersey ("Defendant" or "Port Authority").  For the following reasons, the Court will grant Defendant's motion.

## I.  BACKGROUND

This case arises out of allegations of racial discrimination by Defendant against Plaintiffs, all of whom are African American and are current or former employees of Defendant.  On July 17, 2006, Plaintiffs filed the instant action alleging that Defendant violated their civil rights under the Fourteenth Amendment to the United States Constitution in contravention of 42 U.S.C. §§ 1981, 1983, 1985, and 1986.  Plaintiffs also alleged violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*., and the New Jersey Law Against

Discrimination ("NJLAD"), N.J. Stat. Ann. § 10:5-1 *et seq*.  On January 22, 2007, Defendant

filed a motion for partial dismissal of the Complaint and a motion for a more definite statement.

On October 18, 2007, then District and now Circuit Judge Joseph A. Greenaway, Jr., granted

Defendant's motion for partial dismissal of the Complaint.  The only remaining claims consisted

of a Title VII claim by Plaintiff Janet L. Evans for one alleged act that occurred after January 20,

2005, and the § 1983 claims by Plaintiffs Evans, Robert A. Coplin, Annette Barry-Smith,

Rochelle Joyner, Ronald Smith, Bonnie L. Ford, Neil Skelton,[1] and Judith A. Samuel for acts that

occurred after July 17, 2004.  Judge Greenaway noted that any § 1983 claims for acts occurring

before that date were time-barred by New Jersey's applicable two-year statute of limitations.[2]

Judge Greenaway also granted Defendant's motion for a more definite statement and ordered

Plaintiffs to provide specific dates and time periods during which the alleged acts of

discrimination occurred.

 Plaintiffs filed an Amended Complaint on November 26, 2007, and a Second Amended

Complaint on December 10, 2007.  On December 31, 2007, Plaintiffs filed their Third Amended

Complaint.  On March 1, 2010, Defendant filed the instant motion for summary judgment.[3]

---

[1] On May 1, 2008, all claims asserted on behalf of Plaintiff Neil Skelton were dismissed with prejudice by stipulation of the parties.  (Doc. No. 36.)

[2] *See O'Connor v. City of Newark*, 440 F.3d 125, 126-27 (3d Cir. 2006) ("Actions brought under 42 U.S.C. § 1983 are governed by the personal injury statute of limitations of the state in which the cause of action accrued.  For section 1983 actions in New Jersey, 'that statute is N.J.S.A. 2A:14-2, which provides that an action for injury to the person caused by wrongful act, neglect, or default, must be convened within two years of accrual of the cause of action.'" (citations omitted)).

[3] By order of March 15, 2010, the instant matter was reassigned to the undersigned.

## II. DISCUSSION

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Hersh v. Allen Prods. Co.*, 789 F.2d 230, 232 (3d Cir. 1986). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (noting that no triable issue exists unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict in its favor). In deciding whether triable issues of fact exist, this Court must view the underlying facts and draw all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995). The opposing party "may not rely merely on allegations or denials in its own pleading; rather, its response must — by affidavits or as otherwise provided in this rule — set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).

In this case, Plaintiff Evans brings claims under Title VII and 42 U.S.C. § 1983. The remaining Plaintiffs' claims are based solely on § 1983. Discrimination claims brought under Title VII or § 1983 must be analyzed according to the burden-shifting framework which was set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Stewart v. Rutgers*, 120 F.3d 426, 432 (3d Cir. 1997) (applying Title VII *McDonnell Douglas* framework to racial discrimination claims brought under § 1983). That framework consists of three steps. First, the plaintiff has the burden of proving by a preponderance of the evidence a

3

prima facie case of discrimination.  *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248,

252-53 (1981); *McDonnell Douglas*, 411 U.S. at 802.  To establish such a prima facie case, the

plaintiff must show that (1) he is a member of a protected class; (2) he is qualified for the

position in question; (3) he suffered from an adverse employment decision; and (4) the employer

sought to or did fill the position with a similarly qualified person who was not a member of the

protected class.  *McDonnell Douglas*, 411 U.S. at 802.

       Once the plaintiff establishes a prima facie case, the burden of production then shifts to

the defendant, who must articulate a legitimate, nondiscriminatory reason for its actions.

*Burdine*, 450 U.S. at 254; *McDonnell Douglas*, 411 U.S. at 802.  If the defendant satisfies this

burden, the reviewing court must proceed to the third step.  At this stage, the burden of

production shifts back to the plaintiff, who must come forward with admissible evidence

showing that the defendant's articulated nondiscriminatory reasons were not the true reasons for

the adverse action, but merely a "pretext for discrimination."  *Burdine*, 450 U.S. at 253.  A

plaintiff cannot establish pretext based on the mere assumption that race is the reason why he or

she was not hired or promoted.  *Swangin v. Public Schs. of Edison Twp.*, Civ. No. 03-4058, 2007

U.S. Dist. LEXIS 31580, at *39-40 (D.N.J. Apr. 30, 2007).  Moreover, "the plaintiff cannot rely

solely on a potential finding that the defendant's explanation is implausible.  The fact that a judge

or jury might disbelieve the defendant's asserted nondiscriminatory reason is not enough, by

itself, to preclude summary judgment."  *Chauhan v. M. Alfieri Co.*, 897 F.2d 123, 128 (3d Cir.

1990).  Rather, "the plaintiff's evidence rebutting the employer's proffered legitimate reasons

must allow a factfinder reasonably to infer that each of the employer's proffered

non-discriminatory reasons . . . was either a post hoc fabrication or otherwise did not actually

4

motivate the employment action (that is, the proffered reason is a pretext)." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994) (citations omitted).  Thus, to defeat a motion for summary judgment, a plaintiff "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence,' and hence infer 'that the employer did not act for [the asserted] non-discriminatory reasons.'" *Id.* at 765 (citations omitted).

A.  Plaintiff Evans

Plaintiff Janet L. Evans's Title VII and § 1983 claims are based on the same alleged act of discrimination occurring in April 2005.  Plaintiff alleges that she expressed interest in the position of Director of Government and Community Affairs, and that she was discriminated against based on race in April 2005 when Defendant appointed Shawn Laurenti, a Caucasian female, to that position instead of her.  The job description for the Director of Government and Community Affairs states that:

> This is an executive level position responsible for advising the Chief, Public and Government Affairs, Deputy Executive Director and Executive Director on New York and New Jersey legislative and community matters.  This position acts as a liaison with the Office of the Governors of New York and New Jersey, with members of the NY and NJ legislatures and with other government officials and civic leaders.  Additionally, the incumbent closely monitors activities of NY and NJ governments, legislative and community entities for actions affecting Port Authority operations or programs.  Further, this position recommends, oversees, coordinates and manages public outreach initiatives with the political, social, and business communities in New York and New Jersey.

(Alito Certif., Ex. M.)  The requirements for the position are:

> Undergraduate degree in public policy, government or business related fields (graduate degree desirable). Extensive experience in legislative affairs, lobbying, or working in the public sector. Demonstrated knowledge of both New York and New Jersey government and of the social and political infrastructure of both states. Ability to assist senior executives in formulating a strategic framework for identifying and addressing NY/NJ issues. Excellent communications, report writing, public speaking and leadership skills required.

(*Id.*)

Evans's Title VII and § 1983 claims with regard to this position must both be analyzed according to the three-step framework set forth in *McDonnell Douglas*. First, this Court concludes that Evans has failed to establish a prima facie case of discrimination because she has failed to demonstrate that she was qualified for the position of Director of Government and Community Affairs. The record establishes that Evans was hired by Defendant in 1979 as an Administrative Assistant, and went on to hold various job titles with the Port Authority until her retirement in 2009. Evans received a Bachelor's Degree in Journalism and English from Rutgers University in 1978, and in May 2004, Plaintiff Evans received a Master's degree in Public Administration from Rutgers. However, Evans has provided no evidence of any experience she has with regard to the requirements of the position, such as any experience in legislative affairs, knowledge of New York and New Jersey government and the social and political infrastructure of both states, ability to assist senior executives in formulating strategic frameworks for identifying issues in New York and New Jersey, or communications, writing, public speaking, and leadership skills. The fact that she obtained a Master's degree in Public Administration the year before the position was filled by Laurenti is not enough to create a genuine issue of material fact regarding her being qualified for the executive level position as Director of Government and

6

Community Affairs.

Even if Evans established a prima facie case of discrimination, Defendant has set forth a legitimate nondiscriminatory reason for appointing Laurenti to the Director of Government and Community Affairs position.  Defendant articulated to Evans that the Port Authority has a hybrid nature as a "body corporate and politic," and that given that operational context, it periodically hires new staff from outside the Port Authority to complement the career service staff.  (Alito Certif., Ex. J.)  Defendant proffered that such hires help the Port Authority achieve the objectives of the two states and the policy makers in those states.  (*Id.*)  Given that the Director position is "responsible for advising the Chief, Public and Government Affairs, Deputy Executive Director and Executive Director on New York and New Jersey legislative and community matters," "acts as a liaison with the Office of the Governors of New York and New Jersey, with members of the NY and NJ legislatures and with other government officials and civic leaders," and "recommends, oversees, coordinates and manages public outreach initiatives with the political, social, and business communities in New York and New Jersey," it is reasonable that Defendant would seek to appoint someone to the position who had significant experience outside of working for the Port Authority.  (Alito Certif., Ex. M.)

Evans contends that Defendant hired Laurenti despite the fact that she failed to possess the requisite qualifications for the Director position.  The record establishes, however, that Laurenti has an extensive resume with qualifications that fit squarely within the Director's job description and requirements.  Laurenti holds a Bachelor's degree in Public Administration from Georgetown University and a Master's degree in Public Administration from Rutgers.  Laurenti served as Director of Appointments and Special Assistant to the Governor of New Jersey from

2003 through April 2005.  She served as Deputy Chief of Staff for External Affairs to the Commissioner of Transportation for New Jersey from 2002 to 2003.  She has also served as a Legislative Aide to the New Jersey Commissioner of Banking, Deputy Director of Housing for the Democratic National Convention, and Assistant to the Chairman of the New Jersey Democratic State Committee.

Evans has failed to demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in Defendant's proffered legitimate reasons for not hiring her for the Director position such that a reasonable factfinder could find them to be "unworthy of credence."  *See Fuentes*, 32 F.3d at 765.  Evans argues, without explanation or citing specific evidence in the record, that "there is a mountain of evidence that establishes the failure to promote Plaintiffs was based upon a racially discriminatory animus.  As set forth in Plaintiffs' Statement of Facts, Defendant used a number of guises to hide almost unbelievable acts of discriminatory employment practices."  (Pls.' Br. at 24.)  Evans, however, has not provided any support for the allegation that Defendant's articulated reasons for not hiring Evans were mere "guises," and therefore has failed to satisfy her burden of coming forward with admissible evidence showing that the Defendant's articulated nondiscriminatory reasons were merely a "pretext for discrimination."  *See Burdine*, 450 U.S. at 253.  This Court concludes that Evans has failed to demonstrate a genuine issue of material fact with regard to her being qualified for the Director position or with regard to any alleged pretext for Defendant's articulated nondiscriminatory reasons for not hiring her.  Thus, the Court will grant summary judgment in favor of Defendant on Evans's Title VII and § 1983 claims.

B.  Plaintiff Coplin

Plaintiff Robert Coplin alleges that he was discriminated against in violation of § 1983 when he applied for the position of Labor Relations Specialist in 2006 and Defendant hired a Caucasian female instead.  This Court concludes that Coplin has failed to set forth a prima facie case of discrimination because Coplin has not established that he was qualified for the position. First, it is undisputed that the position of Labor Relations Specialist was several grade levels above Coplin's grade at the time he applied for the position.  (Alito Certif., Ex. N at 46:2-5; Pls.' Statement of Material Facts ¶ 76.)  Also, the first job requirement for the position of Labor Relations Specialist was "Demonstrated ability to establish working relationships and interact with Port Authority staff at all levels and external parties such as union affiliates, attorneys, and arbitrators/hearing officers."  (Alito Certif., Ex. Q; Ex. N at 46:6-13.)  Coplin admitted in his deposition testimony that he lacked that experience.  (*Id.* at 50:11-14.)

Even if Coplin was able to establish a prima facie case of discrimination, however, Defendant has articulated a legitimate nondiscriminatory reason for not hiring Coplin for the position.  Applicants for the Labor Relations Specialist position were rated by multiple interviewers according to various competencies and technical skills.  (Alito Certif., Ex. R; Ex. N at 45:9-23.)  Coplin obtained a low rating of 1 as to his Interpersonal Skills, Contract Usage Experience, and Labor Relations Experience, and overall he received a score of 3.3, the next-to-lowest overall rating of the 11 candidates who applied for the position.  (*Id.*, Ex. R; Ex. N at 51:10-25).  The top score of the 11 candidates was 7.8.  (*Id.*, Ex. R.)  The individual selected for the position received an overall score of 7.4 and had top scores in Contract Usage Experience. (*Id.*, Ex. R.)  This Court concludes that Defendant has articulated a legitimate nondiscriminatory

9

reason for not hiring Coplin based on his lack of experience and his low scores.

Coplin argues that because Defendant hired a Caucasian female who did not have the highest score, that is evidence of Defendant's pretext and custom of hiring Caucasians for supervisory positions without regard for qualifications.  Coplin's argument is without merit. Although Defendant did not hire the person with the top overall score of 7.8, it did hire the person with the second highest overall score of 7.4.  Moreover, that person had received the highest overall score in the average of the technical categories like Contract Usage Experience and Labor Relations Experience.  (*Id.*, Ex. R.)  Coplin, on the other hand, had an overall score of only 3.3, much lower than that of the person who was hired.  Under these circumstances, the fact that the hired person's score was 0.4 lower than the top score does not justify Coplin's assertion that Defendant filled the Labor Relations Specialist position without regard for qualifications. Coplin has not set forth any other argument or evidence establishing a genuine issue of material fact that Defendant's articulated reasons for not hiring him for the position were merely pretext. Thus, this Court will grant summary judgment in favor of Defendant on Coplin's claim.

C.  Plaintiff Barry-Smith

Plaintiff Annette Barry-Smith contends that she was discriminatorily denied the position of Principal Property Representative in July 2005 based on race.  The position of Principal Property Representative involved "develop[ing] and oversee[ing] all long-term interagency agreements and formulat[ing] an operations and management plan for the World Trade Center site including a formal governance structure between the Port Authority and various entities involved in the planning and development of new facilities, commercial projects and infrastructure in and around the WTC site."  (Alito Certif., Ex. FF.)  The position required a

10

Bachelor's degree in finance, urban planning, real estate, business or a related field, with an advanced degree being desirable.  (*Id.*)  The position also required "[f]ive to seven years of experience in commercial office, residential and retail real estate areas and/or development of such large-scale projects"; "[s]trong urban planning or related experience to be able to recognize issues and potential business and legal impacts of design and construction decisions for interconnecting areas"; and "ability to analyze real estate, operating and easement terms."  (*Id.*)

Barry-Smith was screened out and not selected to interview for the Principal Property Representative position.  Defendant informed Barry-Smith that she was not selected because other applicants' experience more closely satisfied the position requirements.  (Alito Certif., Ex. GG at 243:10-244:8.)  There were a total of twelve applicants for the Principal Property Representative Position, six of whom were screened out and not selected for an interview.  (*Id.*, Ex. JJ.)  Of the six not selected for an interview, four were Caucasian and two (including Barry-Smith) were African American.  (*Id.*, Ex. JJ; R. Pearson-Smalls Decl. ¶ 14.)

The person hired for the Principal Property Representative position was an Asian female with a Bachelor's degree in Civil Engineering, a Master's degree in Environmental Engineering, a Master's degree in Business Administration, an EIT certification by the New York State Engineering Licensing Board, and was a Leadership in Energy & Environmental Design ("LEED") Accredited Professional.  (*Id.*, Ex. II; Ex. HH; Ex. EE at 101:12-18.)  That individual formerly served as a Project Manager for Environmental Policy & Regulatory Compliance for the Port Authority, where she developed experience working with law, real estate, and engineering departments to secure easements and rights-of-way.  (*Id.*, Ex. II.)  She was also responsible for negotiating agreements with external entities including the Army Corps of Engineers, federal and

state regulators, local governments, and the public.  (*Id.*)  She also served as a Senior Engineer for the World Trade Center PATH, where she developed a Request for Proposal for Environmental Impact Statement and the Design Contract for the World Trade Center PATH station; oversaw design teams consisting of consultants, in-house engineers, architects, and program managers; conducted presentations on sustainable design to Priority Capital Program client group to develop the Master Plan for the entire World Trade Center site; and reviewed contract documents to ensure achievement of LEED criteria such as renewable construction material used in the World Trade Center PATH station.  (*Id.*)

Barry-Smith, on the other hand, had a Bachelor's degree in Business Administration, a Master's degree in Publishing, and a Master's degree in Energy Management.  (Hamlin Certif., Ex. 19.)  Barry-Smith's experience primarily involved working as a Project Manager for Port Authority channel-deepening and maintenance-dredging projects.  (*Id.*)  She also served as a Senior Transportation Planner for the Port Authority, which involved, among other things, assisting in comprehensive waterways development studies and performing project management functions for initiatives associated with the Waterways Development Division.  (*Id.*)

The candidate who was ultimately selected by the Port Authority had more experience with the World Trade Center site, while Barry-Smith's experience was primarily limited to the Port Authority waterways.  Because the position dealt with formulating an operations and management plan for the World Trade Center site, it is reasonable that Defendant would want to hire someone with experience working at that location.  Also, the selected individual had experience working with law, real estate, and engineering departments, and had experience in the development of varying projects.  The selected individual had two degrees in engineering and a

Master's degree in Business Administration, which also makes it reasonable to believe that Defendant would find that individual more qualified than Barry-Smith.

The Court finds that, assuming Barry-Smith has established a prima facie case of discrimination, Defendant has articulated a legitimate nondiscriminatory reason for not hiring Barry-Smith for the Principal Property Representative position.  Barry-Smith contends that her accomplishments and qualifications are evidence that Defendant's reasons for not selecting her for an interview are pretext for racial discrimination.  As discussed above, Defendant's reason for not interviewing Barry-Smith – that the other individual's qualifications more closely satisfied the position requirements – was reasonable.  Barry-Smith's assertion that she also had certain accomplishments and qualifications does not demonstrate such weakness or implausibility in Defendant's proffered reason for not hiring her such that a reasonable factfinder could find it to be mere pretext for racial discrimination.  Thus, this Court concludes that no genuine issue of material fact exists and will grant summary judgment in favor of Defendant on Barry-Smith's claim.

### D.  Plaintiff Smith

Plaintiff Ronald Smith alleges he was discriminated against in violation of § 1983 when he was denied a Senior Financial Analyst position in 2000 and 2003.  Smith also alleges he was discriminated against when he was not reclassified to the position of Senior Financial Analyst in 2006.  First, as Judge Greenaway held in his October 18, 2007 Opinion, any § 1983 claims for acts that occurred prior to July 17, 2004, are barred by New Jersey's applicable two-year statute of limitations.  Therefore, Smith's § 1983 claims based on the alleged acts occurring in 2000 and 2003 are time-barred.

With regard to Smith's claims related to the alleged discriminatory acts in 2006, Defendant contends that in 2006, individuals were promoted to the position of Senior Financial Analyst for reasons such as earning performance ratings of outstanding or above during 2006 or 2005; having been recommended for promotion by their managers several times; maintaining good or perfect attendance in the past several years; possessing excellent technical skills; requesting lateral assignments; or accepting mobility assignments.  (Alito Certif., Ex. BB, Def.'s Ans. to Interrogatory No. 25.)  Defendant contends that Smith did not meet any of those qualifications for promotion.  (S. Carr Decl. ¶ 14.)  In Smith's evaluation conducted in 2005, he received ratings of "Met Objective" in his performance ratings, and it was noted that his monthly variance reports were "perfunctory in nature" and "rarely demonstrate investigative initiatives" and that he "never volunteered for additional work."  (Alito Certif., Ex. X.; Ex. W at 43:14-44:16.)  The four individuals who were promoted to the Senior Financial Analyst position all had characteristics that were within the criteria for promotion.  (S. Carr Decl. ¶¶ 9-13.)  Moreover, contrary to Smith's contentions, not all of the individuals who were promoted to the Senior Financial Analyst position in 2006 were Caucasian; rather, one was Asian, one was Hispanic, one was African American, and one was Caucasian.  (S. Carr Decl. ¶ 9; Alito Certif., Ex. CC.)

Assuming that Smith has established a prima facie case of discrimination, this Court finds that Defendant has met its burden under the *McDonnell Douglas* framework of proffering a legitimate nondiscriminatory reason for not promoting Smith.  Smith fails to present any evidence to establish that Defendant's proffered reasons for not promoting him were pretextual. Smith simply contends that because Defendant hired Caucasians for the position, that is evidence of Defendant's custom of not hiring African Americans.  Not only is Smith's contention

14

contradicted by the facts in the record, that allegation alone is insufficient to establish a genuine issue of material fact that Defendant's reasons were mere pretext for racial discrimination.  Thus, this Court will grant summary judgment in favor of Defendant on Smith's claims.

E.  Plaintiff Joyner

Plaintiff Rochelle Joyner contends that she was discriminated against in violation of § 1983 when she obtained a position in the Project Management Department in 2005 but did not receive the grade level associated with that position.  Joyner alleges that she started at a grade level of 93 even though the Project Manager position was advertised to start at a grade level of 94.  As Joyner admitted in her deposition testimony, however, one of the requirements for the Project Manager position was a Bachelor's degree in Engineering or Architecture.  (Hamlin Certif., Ex. 19 at 47:14-48:3.)  Joyner admitted that she does not meet that requirement because she does not have a degree in Engineering or Architecture.  (*Id.* at 48:4-5.)  Rather, Joyner has a Bachelor's degree in Environmental Science and a Master's degree in Engineering Management. (*Id.* at 19:21-20:5.)  Joyner could identify one person who was above a grade level of 93 working in the Project Management Department that, like her, did not have an Engineering degree.  (*Id.* at 49:13-16.)  However, that person held a position as a Senior Project Manager, as opposed to simply a Project Manager position, and at the time that person transferred into the Project Management Department he was a Grade 7 employee, whereas at the time Joyner transferred into the Department she was only a Grade 5 employee.  (*Id.* at 43:25-45:1; 49:13-50:1.)

Joyner's own deposition testimony indicates that she did not possess the requisite qualifications to receive a grade level of 94, and thus she has failed to establish a prima facie case of discrimination.  Even if the Court were to assume that she has established a prima facie case

15

of discrimination, this Court concludes that Defendant's proffered reason as to why Joyner did

not qualify for a grade level of 94 – her lack of a degree in Engineering or Architecture – is a

legitimate nondiscriminatory reason satisfying the second step of the *McDonnell Douglas*

framework.  Joyner does not present any argument or any evidence that Defendant's proffered

reasons are pretext for racial discrimination.  Rather, in her deposition testimony, when asked if

she could articulate "what facts [she] rel[ies] on to support the contention that the reason why

[she is] not a 94 is because of [her] race," she replied "No, I cannot."  (*Id.* at 34:23-35:1.)  She

also responded that she did not "have any reason to believe that the three people who interviewed

[her] did anything but evaluate on the merits to the best of their ability."  (*Id.* at 51:5-9.)  Under

these circumstances the Court concludes that no genuine issue of material fact exists and will

grant summary judgment in favor of Defendant on Joyner's claims.

### F.  Plaintiff Ford

Plaintiff Bonnie Ford alleges that she sought positions in the areas of "Operational

Services, Program Manager for Environmental" in June, August, and September of 2004 and was

denied promotions to those positions.  (Third Am. Compl. ¶ 136.)  Ford contends that she was

denied these promotions because of her age and race, in violation of § 1983.  First, with regard to

the alleged discriminatory acts that occurred in June 2004, Ford's claims based on those alleged

actions are barred by the two-year statute of limitations, as noted by Judge Greenaway in his

October 17, 2008 Opinion.  To the extent that Ford's claims are based on age discrimination, the

Court will grant summary judgment on those claims because "the basis for a § 1983 claim may

only coexist with a claim of discrimination when it rests on a substantive constitutional right."

*Swangin*, 2007 U.S. Dist. LEXIS 31580, at *51 (citing *Bair v. City of Atlantic City*, 100 F. Supp.

16

2d 262, 267 (D.N.J. 2000)).  Thus, "because age discrimination is not, per se, a constitutional

violation, but rather, a statutory one, '[the Age Discrimination in Employment Act] preempts

other federal remedies for age discrimination, including § 1983.'"  *Id.* (citation omitted).  Even if

the court were to assume that Ford has established a prima facie case of racial discrimination,

Ford has not offered any support to create a genuine issue of material fact that Defendant's

alleged actions were based on racial discrimination and not simply because she was not as

qualified for the positions.  Therefore, this Court will grant summary judgment in favor of

Defendant on Ford's claims.

G.  Plaintiff Samuel

In Plaintiffs' Third Amended Complaint, Plaintiff Judith A. Samuel alleges that she

applied for the positions of "Associate Systems Programmer, Senior Administrator, Sr. Buyer,

Management Information Specialist, Buyer, Staff Financial Analyst, Associate Financial Analyst,

Staff Auditor, Senior Principal Contract Specialist, and Staff Financial Analyst in or about

September of 2004."  (Third Am. Compl. ¶ 118.)  Plaintiff Samuel contends that she was denied

promotions for each of these ten positions based on racial discrimination in violation of § 1983.

Despite the allegations in the Third Amended Complaint, in her deposition testimony Samuel

admitted that she applied for at least seven of the ten positions prior to 2004.  (Alito Certif., Ex. F

at 22:4-12; 23:9-15; 25:18-24.)  Samuel did not recall when she applied for the positions of

Management Information Specialist, Buyer, or Senior Principal Contract Specialist.  (*Id.* at

22:13-24:10.)  Samuel further admitted that she could not identify any position that she applied

for and was denied since July 17, 2004.  (*Id.* at 26:2-19.)  As noted previously, any § 1983 claims

based on alleged actions occurring before July 17, 2004, are barred by the two-year statute of

limitations.  Thus, because Samuel has not identified any positions that she applied for since that date, the Court will grant summary judgment in favor of Defendant on Samuel's claims.

Even if this Court were to assume that Samuel applied for the positions of Management Information Specialist, Buyer, and Senior Principal Contract Specialist after July 17, 2004, Samuel was unable to identify information regarding her applications to those positions that would establish a prima facie case of discrimination.  Moreover, even if the Court were to further assume that she was able to establish a prima facie case, Samuel has provided no argument or evidence to create a genuine issue of material fact that Defendant's alleged actions were based on racial discrimination as opposed to decisions based on the respective qualifications of candidates. Therefore, this Court will grant summary judgment in favor of Defendant on Samuel's claims.

## III.  CONCLUSION

For the foregoing reasons, this Court will grant Defendant's motion for summary judgment (Doc. No. 64).  An appropriate form of order accompanies this Memorandum Opinion.

Dated: August 26, 2010

                                       S/Garrett E. Brown, Jr.     
                                     Garrett E. Brown, Jr., Chief Judge
                                     United States District Court